# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### DECEMBER 1998 SESSION

FILED

March 23, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 03C01-9804-CR-00125 |
| | ) | |
| Appellee | ) | |
| | ) | Monroe County |
| vs. | ) | |
| | ) | Honorable R. Steven Bebb, Judge |
| **LAUREN E. LESLIE AND** | ) | |
| **JANIE WHITEHEAD,** | ) | |
| | ) | (Misdemeanor Sentencing - Denial of |
| Appellants. | ) | Probation) |

FOR LAUREN E. LESLIE:

SHARON G. LEE
Attorney at Law
106 College St., P.O. Box 425
Madisonville, TN 37354-0425

FOR JANIE WHITEHEAD:

CHARLES M. CORN,
District Public Defender
53-A Central Ave.,
P. O. Box 1453
Athens, TN 37364-1453

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

CLINTON J. MORGAN
Counsel for the State
Criminal Justice Division
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

JERRY N. ESTES
District Attorney General

RICHARD CARSON NEWMAN
Assistant District Attorney General
130 Washington Ave., P.O. Box 647
Athens, TN 37371-0647

OPINION FILED: _____

**AFFIRMED**

JAMES CURWOOD WITT, JR.
JUDGE

'                              **OPINION**


The defendants, Lauren E. Leslie and Janie Whitehead, pleaded guilty in Monroe County Criminal Court to assault, a Class A misdemeanor.[1] In addition, Leslie pleaded guilty to reckless endangerment, also a Class A misdemeanor.[2] The trial court sentenced Leslie to two concurrent sentences of eleven (11) months and twenty-nine (29) days. The trial judge ordered him to serve thirty (30) percent of that sentence as a "standard offender." Whitehead received a sentence of eleven (11) months and twenty-nine (29) days to be suspended after serving the first thirty days in confinement. In addition, the defendants are jointly and severally liable for restitution in the amount of $957. In this direct appeal, the defendants contend that the trial court erred in ordering them to serve a portion of their sentences in confinement.[3] After reviewing the record on appeal and the briefs of the parties, we affirm the judgment of the trial court.


When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a <u>de novo</u> review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d)(1997).


A misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. <u>State v. Randall C. Conner</u>, No. 03C01-9401-CR-00024,

---

[1]     Tenn. Code Ann. 39-13-101 (1997). We cannot determine from the record whether the convictions were entered pursuant to section 39-13-101(a)(1), (2), or (3). However, because the defendants were indicted for aggravated assault involving serious bodily injury, <u>see</u> Tenn. Code Ann. 39-13-102(a)(1)(A), we presume that Leslie and Whitehead pleaded guilty to intentionally, knowingly or recklessly causing bodily injury to another under paragraph (a)(1) of the section 39-13-101.

[2]     Tenn. Code Ann. § 39-13-103(a) (1997).

[3]     In the statement of the issues, Leslie also contends that the trial court erred by imposing maximum sentences. However, this issue is not addressed in the argument portion of the brief. This court treats as waived issues which are not supported by argument, citation to authorities, or appropriate references to the record. Tenn. Ct. Crim. App. R. 10(b).

2

slip op. at 6 (Tenn. Crim. App., Knoxville, Aug. 12, 1994); State v. Bernell B. Lawson, No. 63, slip op. at 7 (Tenn. Crim. App., Knoxville, May 23, 1991). Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302. The statute requires the court to impose a "specific number of months, days or hours . . . consistent with the purposes and principles of the [Criminal Sentencing Reform Act of 1989]." Tenn. Code Ann. § 40-35-302(b) (1997). Then the court is to determine a percentage of the sentence which the misdemeanant must serve before becoming eligible for certain release programs.[4] Tenn. Code Ann. § 40-35-302(d). In determining the percentage, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d); State v. Palmer, 902 S.W.2d 391, 393-94 (Tenn.1995); State v. Gilboy, 857 S.W.2d 884, 888-889 (Tenn. Crim. App. 1993).

Finally, the misdemeanor sentencing statute authorizes the court to place a defendant on probation immediately or after service of a portion of the sentence. Tenn. Code Ann. § 40-35-402(e). The trial court maintains jurisdiction over a defendant placed in jail and may reduce or modify the sentence or place the defendant on probationary supervision. Tenn. Code Ann. § 40-35-314(c). The statute is designed to provide a trial court with continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. State v. Dwight Johnson, No. 03C01-9209-CR-00328, slip op. at 7 (Tenn. Crim. App., Knoxville, May, 18, 1993), perm. to appeal denied (Tenn. 1994).

As noted above, appellate review in this case is *de novo* review on the record of the "length, range or the manner of service of the sentence . . . conducted with a presumption that the [trial court's] determinations . . . are correct." Tenn.

---

[4] Upon service of that percentage, the administrative agency governing the rehabilitative programs has the authority in its discretion to admit the defendant to a rehabilitative program. Tenn. Code Ann. § 40-35-302(d)(1997).

Code Ann. § 40-35-402(d) (1997). In a recent opinion, the Tennessee Supreme Court held that in misdemeanor sentencing a trial court is not required to place specific findings on the record. State v. Kenneth Eugene Troutman ---S.W.2d ---, No. 03S01-9705-CC-00049 (Tenn., Knoxville, Nov. 9, 1998). Although the court had previously held that the statutory presumption of correctness was "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances," State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991), a logical and reasonable inference from Troutman is that Ashby does not apply to misdemeanor cases. Ashby relied in significant part upon the factors the trial court and the appellate court are to consider as enumerated in Code section 40-35-210(b) and upon the provision in section 40-35-210(f) which requires the trial court to place its findings on the record as further required by section 40-35-209. Under Troutman, the sentencing instructions contained in sections -209(c) and -210(f) apply only in felonies. Troutman, ---S.W.2d at ---, slip op. at 7. Accordingly, although the trial court in the present case did not make any findings relative to specific enhancement and mitigating factors, the presumption of correctness nevertheless applies *via* the straightforward dictates of section 40-35-401(d).

In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendants' criminal record, their background and social history, their present condition, including their physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974).

In this case, Janie Whitehead pleaded guilty to a single count of assault, a Class A misdemeanor, and Leslie pleaded guilty to assault and reckless endangerment, also a Class A misdemeanor. A Class A misdemeanor is punishable by a maximum sentence of eleven (11) months and twenty-nine (29)

4

days.  Tenn. Code Ann. § 40-35-111(e)(1) (1997).  The trial court imposed the maximum sentence for each conviction and denied immediate probation to both defendants.  At the close of the sentencing hearing, the prosecutor recommended consecutive sentences for Leslie and remarked that the state "was not sure that jail time was appropriate here."  He asked the trial court to impose 60 days of community service for Leslie and 30 days of community service for Whitehead.  The trial judge rejected the prosecutor's recommendations and found that the defendants had severely assaulted Linda Spurgeon and that the attack was well-planned and premeditated.

## Janie Whitehead

Whitehead does not contend that the imposition of the maximum sentence was improper, but she argues that because of her good social history and lack of any serious criminal record she should have been granted immediate probation rather than serving the first thirty days in confinement.

The record indicates that Whitehead was thirty-eight years old at sentencing.  The mother of two grown children, she had been steadily employed since 1990.  Her prior criminal record consists of a 1988 or 1989 conviction for possession of marijuana in Blount County.  At the hearing, she testified that she had moved into a house owned by the defendant, Lauren Leslie.  Leslie lived nearby in a trailer.  She met Linda Spurgeon at a cook-out at Leslie's place. The two women became embroiled in a dispute concerning Leslie that culminated in a meeting of the three at Bat Creek.  The purpose of the meeting was apparently to effect Leslie's return of a cellular telephone to Spurgeon.  Whitehead alleged that Spurgeon became abusive and belligerent even though Leslie returned the cell phone to her.  Whitehead became angry and jumped out of the truck.  When Spurgeon swung her purse at Whitehead she hit the window in her car instead.  The

5

window cracked.  A fight ensued in which Whitehead soon gained the upper hand.

She admitted

hitting the victim and, at one point, pulling her to her feet and throwing her across

the hood.  According to Whitehead, Leslie stayed in the truck during the entire fight.

When another vehicle pulled into the parking area, Leslie went and spoke to the

driver.  Then the victim got into her car and followed the other vehicle down the

road.

Spurgeon testified that when she arrived at Bat Creek, Leslie was

sitting in the truck by himself.  She climbed in the passenger seat and they began

to argue.  He hit her in the face, and when she turned to get out of the truck,

Whitehead was standing by the door.  Whitehead pulled her out and threw her to

the ground.  Spurgeon testified that Leslie kicked her in the head, hit her with a beer

bottle and poured beer in her face while Whitehead choked her to the verge of

unconsciousness.  She accused Leslie of breaking her car window when he swung

her purse at her.  She escaped only because the two defendants were distracted

by the arrival of the third vehicle.  She was treated at the emergency room, and

Angela Quillen, who also testified at the hearing, took photographs which depict the

victim's condition after the attack.

Although Whitehead has only a minimal criminal record and has

been self-supporting, we find that the record justifies the sentence imposed by the

trial court.  The trial court rejected Whitehead's testimony as self-serving and

incredible. He found that the defendants had plotted to ambush the victim and that

when the victim arrived at Bat Creek, Whitehead was hiding nearby.  The trial

court's factual findings are binding on this court unless the evidence in the record

preponderates against them.  State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim.

App. 1990).  A defendant's truthfulness is a factor that may be considered by the

trial court on the question of probation.  State v. Chrisman, 885 S.W.2d 834, 840

(Tenn. Crim. App. 1994).  Lack of truthfulness is probative on the issue of

6

amenability to rehabilitation. State v. Byrd, 861 S.W.2d 377, 380 (Tenn. Crim. App. 1993). Moreover, denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). Based upon these factors, the record supports a short period of incarceration.

**Lauren E. Leslie**

Leslie pleaded guilty to the assault of Linda Spurgeon and to the reckless endangerment of Angela Quillen. At the sentencing hearing, Leslie corroborated Whitehead's version of the events of the assault. He denied hitting Spurgeon and insisted that he had not left the truck until the other car arrived. With respect to the reckless endangerment charge, Leslie testified that on June 1, 1997, approximately two weeks after the assault and on the day he was released from jail, he was driving on a road not far from Bat Creek. He encountered Quillen, a relative and close friend of Spurgeon, who was driving in the opposite direction. According to Leslie, he became irritated because she was smiling at him and "flipped her a bird." Quillen, who was familiar with Leslie and his truck, testified that he swerved out of his lane and drove straight at her, nearly driving her off the road. When the two wheels on the passenger side left the pavement, her vehicle came close to a shallow pond located just off the roadside.

Other evidence demonstrates that the defendant, who was thirty-three years old at time of sentencing, had received his commercial driver's license after completing a course which trained him to become an over-the-road truck driver. His criminal record consists of a first DUI conviction in 1991 and a second in 1992. The state also presented evidence of orders of protection that two women had obtained against him. At the conclusion of the hearing, the trial court denied the state's request for consecutive sentences but imposed the maximum sentence possible for

7

each conviction and ordered the defendant to serve thirty (30) percent of his sentence as a Range I offender.

First, we address the portion of the judgment which states the defendant is to serve thirty (30) percent of his sentence as a Range I offender. See Tenn. Code Ann. § 40-35-501(c) (release eligibility date for Range I offenders set at 30%). The sentencing ranges established in Tennessee Code Annotated sections 40-35-105 through 109 do not apply to misdemeanor sentences. See Tenn. Code Ann. § 40-35-105, Sentencing Comm'n. Comments (1997) (the various classes of felonies are divided into three ranges for determining the maximum and minimum penalties); see also State v. Kenneth Eugene Troutman, --- S.W.2d ---, No. 03S01-9705-CC-00049, slip op. at 5 (Tenn., Knoxville, Nov. 9, 1998) (sentencing ranges to not apply to DUI convictions). Consequently, the release eligibility date percentages have no relationship to sentencing in misdemeanors.

A lower court judgment requiring a misdemeanant to serve thirty percent of his sentence as a Range I offender is equivocal. One interpretation of such a judgment is that the percentage stated relates to the percentage that is set under Code section 40-35-302(d). After the court sets the entire misdemeanor sentence by fixing a "specific number of months, days or hours" pursuant to section 40-35-302(b), it sets the percentage of time to be served before the defendant becomes "eligible for consideration" for rehabilitative programs such as work release, furlough or trusty status. The actual decision to admit the defendant to such a program is entrusted to the discretion of "the administrative authority governing the rehabilitative program." Tenn. Code Ann. § 40-35-302(d) (1997). The percentage contemplated by subsection (d) does not establish a *per se* date for release from confinement altogether because release depends upon the future discretionary act of an administrative agency and, in any event, any release is part of a structured "rehabilitative program" and may be only partial or episodic in nature.

8

On the other hand, use of a percentage in conjunction with a sentencing range is analogous to the use of a percentage for calculating a release eligibility date for parole in felony cases. See Tenn. Code Ann. § 40-35-501 (1997). When applying the percentage term applicable to a range classification in felonies, it is common to think of the offender being released from custody when the percentage is served, if he otherwise qualifies. By making this analogy, we believe the trial court contemplated that Leslie would be released on probation after serving thirty percent of his aggregate sentence. As such, the trial court was exercising its authority under Code section 40-35-302(e) to grant probation after a portion of the sentence, in this case thirty percent, is served in confinement. Under subsection (e), the release on probation is not a qualified release into a rehabilitative program. In fact, construing the percentage factor as a condition to probation means that no subsection (d) percentage was set. According to subsection (d), when "no percentage [for release into a rehabilitative program] is expressed in the judgment, the percentage shall be considered zero percent (0%)." Tenn. Code Ann. § 40-35-302(d) (1997). Accordingly, we view the sentence as being probated after thirty percent is served.

Like his co-defendant, Leslie contends that he should have been granted immediate probation. He argues that the nature of the criminal conduct does not justify incarceration and that his good social history and minimal criminal record establish his suitability for full probation. Our review of the record, however, indicates that the defendant has not established his suitability for probation.

According to the presentence report, the defendant is a high school graduate with some college or technical training. He provided the probation officer with the name of only one prior employer where he had worked from June 1, 1996 to September 15, 1997. To the defendant's credit, he had recently completed a truck-driver's course and had avoided any contact with either victim since June of 1997. Although he denied that he used alcohol or illegal drugs in the past, the

9

defendant has two convictions for driving under the influence. He also admitted to being very drunk on the night of the assault. Most important, however, given the facts of this case, are the two orders of protection obtained by women other than the victims in this case.[5]

Based on these uncontroverted facts, we conclude that the trial court did not err in imposing incarceration at thirty (30) percent rather than placing the defendant on immediate probation. The defendant denied all responsibility for the offenses despite having entered guilty pleas. He denied having a problem with alcohol despite his two DUI convictions and his own admission that he was drunk the night of the assault on Spurgeon. A lack of candor indicates that his amenability to rehabilitation is poor. State v. Byrd, 861 S.W.2d at 380. The nature and circumstances of the offenses are aggravated, and Leslie's past record of violence against women indicates that he is likely to repeat his actions. Full probation would not be in the best interests of either the public or the defendant. Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). Moreover, extending the largess of full probation in this case would depreciate the seriousness of the offenses.

**Conclusion**

The defendants have neither demonstrated their suitability for full probation nor shown that their sentences are improper. We affirm Whitehead's sentence of eleven (11) months and twenty-nine (29) days for assault with the first thirty days to be served in confinement and the remainder on probation. We also affirm Leslie's concurrent sentences of eleven (11) months and twenty-nine (29) days for assault and reckless endangerment. Leslie must serve thirty (30) percent of his sentence prior to being released on probation.

Leslie's judgment forms as contained in the record should be corrected in conformity with this opinion. The forms indicate that Leslie is a Range

---

[5] The first was entered in 1994 and the other in 1995.

10

I offender; however, sentencing ranges do not apply to those convicted of misdemeanors. See Tenn. Code Ann. § 40-35-105, Sentencing Commission Comments (1997). The percentage of minimum service requirement is blank on both forms. Where no percentage is indicated, the "percentage shall be considered zero (0) percent," Tenn. Code Ann. § 40-35-302(d) (1997). Based on the transcript indicating that the trial judge intended that the defendant serve thirty percent of his sentence, his judgments shall be amended to show that his sentence is probated after serving thirty (30) percent.

_____
JAMES CURWOOD WITT JR., Judge

CONCUR:

_____
DAVID G. HAYES, Judge

_____
JERRY L. SMITH, Judge

**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**DECEMBER SESSION, 1998**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 03C01-9804-CR-00125** |
| **Appellee** | ) | |
| | ) | **MONROE COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. R. STEVEN BEBB, Judge** |
| **LAUREN E. LESLIE AND** | ) | |

11

JANIE WHITEHEAD,           )       **(Misdemeanor Sentencing - Denial of**
                                     )           **Probation)**

        **Appellants**           )

## SEPARATE CONCURRING

Although I concur in the results reached by the majority as to both defendants, I write separately to express concern with the majority's interpretation of the sentence imposed upon Lauren E. Leslie. The trial court ordered defendant Leslie to serve, as a "range I standard offender," two concurrent sentences of eleven months, twenty-nine days at thirty percent. The majority, relying upon Tenn. Code Ann. § 40-35-302(e), interprets the "thirty percent" criteria as the time period defendant Leslie must serve before being released on probation. I conclude, however, after review of the record, that the trial court's statement of "thirty percent" was intended to apply only to defendant Leslie's release eligibility date for work release or other related rehabilitative programs, not probation.

Noting the trial court's reference to a "range I offender," the majority correctly states that "release eligibility date percentages have no relationship to sentencing in misdemeanors." Thus, the majority properly concludes that the trial court's sentencing of defendant Leslie as a range I offender is misplaced and of no significance. However, the majority improperly uses this error as the basis for concluding that the trial court intended the "thirty percent" to be that part of the sentence to be served in confinement. More importantly, the majority disregards the court's sentencing of defendant Whitehead in construing defendant Leslie's sentence. In sentencing defendant Whitehead, the trial court also sentenced her as a range I standard offender, but expressly ordered that Whitehead be placed on probation after thirty days service. If, indeed, the trial court intended for defendant Leslie to receive probation after service of part of his sentence, the court could easily have done so, just as it did with defendant Whitehead. Thus, I interpret the trial court's order that defendant Leslie's sentence of eleven months, twenty-nine days be served in its entirety without any portion being suspended, Tenn. Code

12

Ann. § 40-35-302(e); and with eligibility for release into rehabilitative programs pursuant to Tenn. Code Ann. § 40-35-302(d) at thirty percent.

Accordingly, I find the trial court's denial of probation justified under the facts presented.

_____
                              DAVID G. HAYES, Judge