IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 9, 2003 Session

## STATE OF TENNESSEE v. CALVIN REGINALD EDWARDS

**Appeal from the Circuit Court for Tipton County**
**No. 4464    Joseph H. Walker, Judge**

---

**No. W2003-00077-CCA-R3-CD  - Filed November 24, 2003**

---

The defendant, Calvin Reginald Edwards, entered a plea of guilt to simple possession of marijuana, explicitly reserving a certified question of law challenging the legality of an investigatory stop. See Tenn. R. Crim. P. 37(b)(2)(i).  Because the stop was based upon a reasonable and articulable suspicion, the judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Jeffrey L. Stimpson, Munford, Tennessee, for the appellant, Calvin Reginald Edwards.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Colin Campbell and James Walter Freeland, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

At approximately 4:50 P.M. on October 6, 2001, State Trooper Keith Franks, who was traveling westbound on Highway 179 in Tipton County, slowed his vehicle as he approached an intersection with Highway 54.  At that point, a vehicle driven by the defendant proceeded through the intersection at approximately 45 mph.  During the two- or three-second opportunity the trooper had to observe the exterior of the vehicle's passenger window, he developed a suspicion that the tinted window treatment was "too dark."  See Tenn. Code Ann. § 55-9-107 (regulating alteration of visible light transmittance of vehicle windows).

Trooper Franks followed the defendant's vehicle and, during the two or three minutes it took to find a safe place to stop, he was able to further examine the tint of the car windows.  Trooper Franks activated his blue lights in order to conduct a comparison analysis of his tinted Department of Safety card with the darkness of the tinted windows in the defendant's vehicle.  As Trooper Franks

approached the vehicle, however, he smelled marijuana coming from the interior. He searched the defendant's vehicle and found three marijuana roaches in the center ash tray. Upon investigation, Trooper Franks found that there were three unserved warrants for the defendant's arrest. When the defendant acknowledged that he was a regular user of marijuana, the trooper suggested that he needed to turn over any other contraband before he was jailed, else he might face more serious charges. The defendant then took a marijuana cigarette from his pocket and handed it to the trooper. An examination of the window tint on the driver's side of the defendant's vehicle established that it was in violation of the statute. The trooper did not specifically examine the tint on the passenger side window of the vehicle, the area that aroused his suspicion, indicating all windows appeared to be the same level of darkness.

In this appeal, the defendant argues that the stop of his vehicle violated Article I, Section 7, of the Tennessee Constitution and the Fourth Amendment of the United States Constitution. He contends that the trial court erred by failing to suppress the marijuana seized from the vehicle, arguing that the investigatory stop was not based upon reasonable suspicion supported by specific and articulable facts that an offense had been or was about to be committed. The defendant submits that the holding in United States v. Page, 154 F. Supp 2d 1316, 1320 (M.D. Tenn. 2001), supports his claims. In Page, the district court in the middle district of this state chose not to accredit the testimony of the arresting officer, who insisted that he was able to determine that the tint of a vehicle was too dark during a five- to ten-second observation as it was driven around a sharp curve. The opinion suggests that something more than a "fleeting glance" is necessary to support a traffic stop based upon the darkness of tinted car windows.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). The state always carries the burden of establishing the reasonableness of any detention. See State v. Matthew Manuel, No. 87-96-III (Tenn. Crim. App., at Nashville, Nov. 23, 1988).

Among the narrowly defined exceptions to the warrant requirement is an investigatory stop. See Terry v. Ohio, 392 U.S. 1, 27-28 (1968). An investigatory stop is deemed less intrusive than an arrest. See id. In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which

the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of the stop of a vehicle depends on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 792 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23. The application of the law to the facts, however, requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Tennessee Code Annotated section 55-9-107(a)(1) makes it "unlawful for any person to operate, upon a public highway, street or road, any motor vehicle registered in this state, in which any window . . . has been altered, treated or replaced by the affixing, application or installation of any material which: (A) Has a visible light transmittance of less than thirty-five percent (35%); or (B) . . . reduces the visible light transmittance in the windshield below seventy percent (70%)." The statute expressly authorizes a "police officer of this state to detain a motor vehicle being operated on the public roads, streets or highways of this state when such officer has a reasonable belief that the motor vehicle is in violation of subdivision (a)(1), for the purpose of conducting a field comparison test." Tenn. Code Ann. § 55-9-201(c).

During his testimony, Trooper Franks expressed familiarity with the tint requirements in this state and explained the basis upon which he formed his opinion that the defendant's tinted windows were "too dark." While he had only observed the vehicle for two or three seconds as the defendant drove by at approximately 45 miles per hour, the trooper was able to confirm his belief during the two or three minutes that elapsed before he activated his blue lights. See Pulley, 863 S.W.2d at 30. In our view, the officer had more than corroborated his initial "fleeting glance" of the tint and was able to base the investigatory stop upon articulable and reasonable suspicion. Moreover, the trial court specifically accredited the testimony of Trooper Franks. In Page, the district court chose not to accredit the testimony of the arresting officer and determined that the stop was based upon an inadequate period of observation and followup.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE